[Civ. No. 18552. Second Dist., Div. One. Mar. 11, 1952.]

WARREN V. D. ISHAM, Respondent, v. JOSEPHINE M. ISHAM, Appellant.

Russell H. Pray and Eric A. Rose for Appellant.

Roy J. Brown for Respondent.

THE COURT.—This is an appeal from the judgment in a divorce action.

The parties were married in December, 1926; the action was tried in August, 1950. "In 1938, husband's nephew, Charles Isham, the son of husband's brother, came to the home of the parties and continued to live at the home to the time of trial. When Charles was received in the home he was thirteen years of age. From January 23, 1939, to September 2, 1947, the husband received monies from his brother for the upkeep of Charles Isham, and those monies were accepted and expended by the husband for the expenses of the home. Charles was treated like a member of the family by both husband and wife. Husband testified of frequent arguments and physical punishment given to Charles and complained that his nephew waited hand and foot on the wife. Husband testified further that in 1944, Mrs. Isham decided to sell the house in which they were then living and which was admittedly Mrs. Isham's separate property, but standing at that time in joint tenancy. Husband claims that he did not move to the new location at that time with his wife and Charles because the wife had stated that there was no room for him in the apartment to which

they were moving. At that time, in 1944, Mr. Isham moved to his mother who was then sick, and he stayed with his mother until 1948 when she died. From 1944 to 1948, the husband paid to Mrs. Isham one-half (½) of his salary each month, and further paid the taxes on the property in which his wife was then living and made payments on the furniture.''

At the trial the plaintiff's corroborating witness was Warren Isham, brother of Charles.

At the conclusion of the trial the trial judge commented as follows:

''THE COURT: Well, I will decide this case now so we won't have it over longer, and that you won't have to file briefs, and I am perfectly willing to do it rather than send out notices later.

''This case follows, more or less, the pattern you might say of these cases. There is a lot of family things; I think much of them are exaggerated. I am convinced of it. Things that happen every day in a family, like I mentioned, whether a husband will go to a football game or not with some neighbors—we have all refused to do that if we felt like it, and didn't feel we insulted our wives, or anybody else. Those things in and of themselves, when you get into a court room with its ceremonies and all, have a tendency to gather more emphasis than in my mind they should have. Regardless of all that, these people didn't make a go of it. They messed up their marriage pretty badly before they got through with it, and there is little use in trying to keep them together. I am convinced of that. I don't think they are interested in each other now at least; they don't show it, and they are not at all friendly.

''I think this nephew, Charles, coming into the home— I think, although he says that he didn't, at first, I think it assisted in breaking up the family, and I think as a husband he had a right to complain about that; and it did come to a point where Mrs. Isham had to make her decision between the two, and I am not going to condemn her one way or another on that. We have to make choices in our lives, and she decided that the boy, for whatever reasons, meant more to her than Mr. Isham. They weren't intimate or friendly during these periods; as far as I can see there was too much quibbling about whether the eggs had been paid for, and all that sort of thing, and whether he paid enough to entitle him to breakfast—he made his own bed—he went through

all that, and so on his side he did things too that were exaggerated.

"I think that he exaggerated some of this jealousy business, although I think he had a legitimate complaint to make that this boy had taken over a great deal of his wife's affections, and that he had a right to as a husband, and for that reason I am going to give him a divorce in this case."

It is contended on appeal that the evidence is insufficient to prove a legal residence, cruelty and the necessary corroboration thereof and, that the evidence shows "consideration." It is also contended that the "evidence was overwhelming in appellant's favor" and, that there is no evidence to support the court's finding with respect to a certain $1,000 government bond.

A careful review of the record reveals no merit to any of the above contentions.

■ It would serve no useful purpose to review the arguments pro and con. The law with regard to these questions is well settled. The issue was a question of fact; the trial judge saw and heard the witnesses, observed and took into account the manner in which they testified and the character of their testimony, and decided the controversy as above noted. The record reveals neither prejudicial nor reversible errors and the evidence is sufficient to support the judgment.

The judgment is affirmed.

A petition for a rehearing was denied March 24, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1952.